My name is Manuel Porro Vizcarra. With the federal counsel, Yesenia Varela and Mary Laborde, we represent Isela Velez in this case. We seek that this court to vacate the judgment that was issued by the district court because Isela Velez was a woman that wanted to work, was capable of work, and was not permitted to work by the employer. Once this court construes this case based on the facts and on the way that the district court gave to some facts which in our opinion are impermissible, this court will have to vacate the order because none of the issues decided by the court are issues that are upheld by other court decisions in this case. Counsel, before you get into your version of the facts, don't you have a problem with the timeliness of the filing of at least the retaliation claim? You had to file that within 180 days and you did not. Well, Your Honor, that's not correct. Okay, what's wrong? What's wrong is that what the government, what the defendants are using is the date that the EOC issued the notice, but it's not using the date in which the plaintiff filed the claim with the EOC. Under the case of Holowicki, which is cited in our brief, it is sufficient for a plaintiff to send a letter to the EOC raising the claims of discrimination retaliation, and what controls is the date that that decision, that that letter was sent to the EOC, and what's not controlling is the date when the EOC follows up on the letter. In this case, the claim for the issue that the claim is untimely doesn't hold water when you consider that the date, the charge, the letter to the EOC was presented. Wait a minute. The letter she sent to the EEOC was about February 18, 2011, and that was the charge. Isn't that correct? That's correct. And she's complaining about the June 30, 2010 events, telling her she's not being rehired, and it's more than 180 days between those two events. She was told that she was not going to be reasonably accommodated on April 30, 2010, and that's when the retaliation starts because the reason given... April 30, 2010. Yes, the reason given... Okay, so now we've agreed on that, but it's 233 days, not 180 days between those two dates. In Puerto Rico, Your Honor, based on the cooperating agreement between the agencies, it extends to 300 days, not 280 days. And not under Rivera-Diaz, not for this type of claim. Are you willing to concede the retaliation claim is untimely? No, Your Honor, because the retaliation claim is derived from a series of continuous acts. All right. All right. So then let's take the discrimination and the retaliation claims. Apart from a series of questions about whether your client is in fact an employee, the employer says, look, she was on a one-year contract. The one-year contract expires. She didn't apply for the job, even though she knew she had to apply for the job. That's our explanation. We didn't renew the contract. She never even applied to have the contract renewed. What evidence do you have that that's pretext for discrimination? Well, Your Honor, number one is that the reasons the employer uses to deny the reasonable accommodation is that she was an independent contractor. I'm sorry. The question is, what evidence is there that the employer's explanation is pretextual? Well, Your Honor, it's very, yes, I understand the question. That it was a pretext for discrimination. In this case, the district court held exactly that because she did not renew the paperwork for her contracts, it was reasonable cause to terminate her employment. No, no, her employment only extended to a certain date and she did not apply to extend it beyond that date. She received no notice from the employer that she had to renew the contracts. The employer sent this plaintiff two communications to or through the intranet. The intranet was only accessible to individuals who were at work. So the employer chose the only way to notify an employee so that the employee would not get notice. The employer had used prior to that messenger services, like when they sent the reasonable accommodation form to her. They didn't use messenger service in this case. The employer had communicated with her through their personal email at Hotmail and that was not used in this case. And the employer had sent mailings to her address just like the letter denying reasonable accommodation and the employer did not use it. So it sent it to the intranet. I thought there was a concession that your client knew that she had to apply to get reemployed on a new one-year contract. The plaintiff knew she had to apply once she got notice of what documents to submit. I'm sorry, where in the record am I going to find that she knew only after she got notice from the employer? In her testimony. In her deposition testimony? Please send us a letter that gives us the specific citation in the record to that effect. In addition, she also says in her deposition testimony that when the documents would not arrive on time to the employer, the employer would communicate with her requesting the documents and that didn't happen. But more importantly. You will detail the precise page. I will give her. Before you leave that though, didn't she also acknowledge that she had been through this process several times in the past and she knew what paperwork had to be filed? Yes, she has been an employee for many years there. How can you say she doesn't have notice? Because the process started when all the professional contractors received a letter saying by this deadline you have to produce documents. If she never got the letter, it's a due process consideration. Why should she comply with a notice that she never got? Because she was aware of the timelines from having gone through it several times in the past. It seems to me that that's sort of the obvious answer and she acknowledges it. So deal with that. It is true that she had gone through this process before. But the process started once she got notice of the letter. She could not just by herself sign a contract or send documents without knowing what documents were to be sent. In fact, in this case, there was a mating to her intranet again in which finally the government informed independent contractors that from now on they were going to be considered employees, something that the government had recognized since December of 2009. I'm sorry, your claim is not that she didn't get notice, correct? Because she admits she got the intranet notice. That's not correct, Your Honor. I'm sorry. I thought it was undisputed. It went to everyone. And her problem was because of the eye problem, she couldn't read it. Have you got that wrong? No, no. The only issue as to she couldn't read entails when the reasonable accommodation form was sent to her through the intranet. Then she said, listen, I cannot use it because it's a very small font. Please send it to me again. And then Mabel Medina sent it to her via messenger service. You're denying that she received the intranet notice that the other people in her position, whether you call them employees or contractors, that everyone got saying, if you want to be re-employed, submit these things to us. I would be standing before these three judges if she had received notice. Yes, but you're not answering my question. Can you please repeat it then? I misunderstood it. I thought your case was built on the fact that the notice they sent was through the intranet and she couldn't read it. No, that sounds correct. Are you saying they made an exception for her and they did not send her the intranet notice they sent to everyone else? We're talking about two different things. All right. The letter requesting all independent contractors to submit the documents was sent to her on May 18, 2010. It was sent to the intranet on May 18, 2010. She was out of the job. You're saying intranet. Intranet, yes. Intranet. It has been established that intranet is a system that can only be accessed when you're in the complex. All right, so she was not discriminated against. They sent it to her intranet account. She just wasn't there and, therefore, didn't receive it. She was discriminated because the government knew, the employer knew, that she was not going to access the intranet because she was out of the job. So that is the discrimination. The employer knew that by sending it to the intranet, she would never receive notice of the things she had to do in order to be reemployed. Okay, I now understand. Thank you. I want to discuss the errors of the decision by the district court. The district court stated, because she did not return to work after February 12, that that shows that she could not meet the essential functions of the job. Well, the district court is basically obliterating the definition of what's a qualified individual because a qualified individual basically means someone that can meet the essential functions of the job with or without reasonable accommodation. In this case, the court eliminated the fact that she had requested reasonable accommodation. And you can only understand the decision by the district court if you eliminate the reasonable accommodation portion of the qualified. The employer's position was she was not an employee. She was an independent contractor. Therefore, as a matter of law, there was no obligation to provide a reasonable accommodation. That is a sham performed by the employer because the employer knew since December of 2009 that she was an employee. The employer had met with her and all other professional contractors in December of 2009 and had requested her to sign a form issued by the IRS in which it acknowledged that she no longer was to be considered an independent contractor, that she was an employee, and gave instructions that from now on she would be receiving W-2s instead of the 480.6 forms. Okay. I understood the IRS had taken the position that these, quote, independent contractors were employees. But you're going beyond that. You're saying that the defendants accepted that as a matter of fact and met with people? That is correct, Your Honor. It's on the record. In fact, all professional contractors were required in a meeting at the Bayamon Complex Center to sign off a receipt of that IRS communication and to give it back to the employer. One more point. I'm sorry. Yes. And you're saying that's an acknowledgment? I'm saying that the employer knew that she was no longer an employee since December of 2009, and yet the excuse not to grant her the reasonable accommodation was that she was an independent contractor. That is a sham. The employer paid $3 million in penalties and entered into a closing agreement, which is part of the record. Then why are the next set of documents independent contractor documents and not employee documents? Because the government had a problem. The government had misclassified independent contractors and misclassified employees as independent contractors for several years. So what the government was attempting to do is to maintain the independent contractor figure in the contracts but requesting the employer now to withdraw Medicare and Social Security benefits from the paychecks so that they would no longer get back into problems with the IRS. It just so happens that the last closing agreement, which was entered with the IRS in the year 2009, required the employer to acknowledge in all the contracts that they were employees and not independent contractors. I'd like to make one more point, if I'm allowed, Your Honor. Cases which state that when an employee doesn't show up at work, that's job abandonment, are cases in which the person has not requested reasonable accommodation. This court has stated in the case of PCMNS versus PCP, that the determination whether an employee attends to work or not, which is an essential function of the work, gets subordinated to a second position. Because when the employee requests reasonable accommodation, what the inquiry of the court should be, which was not done in this case, is whether that employee can fulfill the essential functions of her job with reasonable accommodation. The reasonable accommodation requested here, Your Honor, was some audiovisual enhancement to the computer and to the screen so she could see the work. I'll go back and look at your pleadings again. But I thought this case was not about a, quote, failure to give reasonable accommodation, but about loss of a job. I thought your pleadings and the relief that you wanted go to the question of whether there was an obligation to extend her job. No, Your Honor. This case is based on the fact that we had an individual that requested reasonable accommodation that was denied reasonable accommodation after four months of waiting, and the reason used to deny her was a sham. Okay. Thank you. Thank you. So why send her notice by the intranet when you knew she wasn't in the job at the time? Pardon me? I've asked you a question, please. May it please the Court, Attorney Carmel Lucía Rodriguez, on behalf of Correctional Health Services Corporation and Liberty Mutual.  As has been said in the record, was sent to all the contractors. Nobody knew that a pen wasn't coming back. She had not provided. But you did know. You knew she was out. We knew she was out, but the person who sends the communication didn't know whether she was coming back or not. But we have to remember, after February 10, she left. And I'm going to touch the IRS topic in a bit. She left, and she never came back. She didn't provide any communication. I'm coming back. This is my status. She wasn't under any medical leave. She just simply vanished. And when the time came around to send the emails for the contract renewal process in May, she was included in the list of contractors whose contracts were to be renewed. And they sent the communication. The person in charge sent it to all the contractors who had been recommended for renewal, and a pen was included among them. And the communication was sent intranet because that was the proceeding and because a pen had not provided any other instruction as to that she be contacted anywhere else. There's no information on the record as to being contacted to the person on email or nothing. That was established in the record. So you were perfectly willing to rehire her if she had only applied? Well, she was recommended, yes. She just needed to submit the documents. She was recommended for renewal.  And why is this case up here? I don't know. I didn't appeal. I didn't appeal, but the thing is, the IRS. Why didn't it get settled at the district court level? Because there's no longer that this happened many years ago. There's no longer a position available at this time four years after. But there's some points, the IRS determination that Appellant talked about, that was a negotiation reached, an agreement between the. Before you get to that, they knew she was out, but they sent the notice by way of a mechanism that they knew wouldn't reach her. Well, they sent it internally. The person who sends the communication didn't know that she was not coming back. She testified. I sent it hoping when she came back she would see it. But they knew she'd been out since February, and this is what, the middle of May? Yes, correct, yes. I don't understand how that's reasonably expected to reach her. Because she never said that she was going to be out for four months, three months. She wasn't under a medical leave for X amount of weeks. She was an independent contractor, and she just stopped coming. So nobody knew if she was coming back or not, and this person sent the communication. A letter was sent to her. The letter. By mail to her home saying that she was going to be denied an accommodation because she was not an employee, but yet they didn't send the renewal package to her house. One point. No, they did not send it to her house. So why is that? The person who answered the letter for the recommendation was sent to her house because that was an individual request that was made. She, the other part, was another person that was carrying that process, and there was no discriminatory intent, and plaintiff testified. I don't have an answer why, because I thought she was going to come back, period. Okay. So the right hand doesn't know what the left hand is doing. It's two separate proceedings, Your Honor. But the plaintiff testified. Does that give you a defense? Excuse me? Does that give you a defense? No, Your Honor. A corporate employer. She was an independent contractor, and her tax returns for 2009, 2010. Okay. Then perhaps we better get into this IRS business. You keep saying she's an independent contractor. He says, well, maybe until December of 2009, but not after that. The record shows that she, even in December 2009, when they amended her contract, as per the TCR, the Corrupted By Moral Corrections Agreement with the IRS, the agreement stated that she remained as an independent contractor, more so when she filed her tax returns for 2009. And a letter to us with a precise citation to the record. That is in the record. Because he has just represented to us the opposite. Okay. And more so when she filed her tax returns 2009, 2010, she identified herself as a self-employed and never amended it to say, oh, wait, no, I'm not, I'm an employee. The question under federal law about who is an employee is based on the common law, and there's something like a dozen factors. And we discuss those in the clock-a-dile opinion. The difficulty you're facing is this is on summary judgment before us. One might think, or perhaps one wouldn't think, that there was a question of fact here to be resolved at trial, not on summary judgment.  The IRS test is not the test under the employment statutes. But you continue to maintain, because she signed a contract and she characterized herself on her filings as an independent contractor, that those two facts are dispositive of this issue, that no reasonable jury could have found that she was an employee? Not that dispositive, but when you put the balance, it's more towards that she was an independent contractor. She knew she was. An employee couldn't just leave her employment and not be on a leave or provide updated information. I'm coming back in a week. Here are my medical certificates. She simply vanished. She never came back. An employee couldn't do that. She abandoned her job, and the consequences of abandoning the job, we know which ones they are. Your opponent has said that the district court committed an error of law because it used a definition of qualified employee, which dropped out any reference to with or without reasonable accommodation. He's saying that's a basic error of law that infected this decision, and so we can't rely on it. What's your position on that? My position is the court, as has been established by this First Circuit, attendance is a necessary function of any job, and in order to be able to qualify for a reasonable accommodation, an employee must attend the job, and she simply vanished since February 2010. So you say it may have been an error of law. No. Excuse me. Sorry. But that it's irrelevant because even if you read it as with or without reasonable accommodation, the fact that she just didn't come to work, even if that phrase is included, means that you must win. Correct. She's not qualified because she was not coming to work. Correct. Okay. Excuse me. May I ask you a question? Sure. She asked for an accommodation, and the answer she gets back is that we're not going to engage in an interactive process because you're not an employee, you're an independent contractor. What is she supposed to do then? Okay. My client, can I answer the question? Yes, of course. My client is the administrator of the health program with the Department of Correction. Right. My client cannot amend contracts, cannot change the nature of the relationship between employees or contractors and the Department of Correction. I simply have to do what has been agreed with the Department of Correction. And since her agreement with the Department of Correction was that of an independent contractor, I couldn't go above that and change the nature. So there's an acknowledgement then that there was no interactive process engaged in. There was not. And so the district court has not resolved the question of whether she was an independent contractor. Is that accurate? It's correct. I just deem it in the manner most favorable to her. And so if she is determined to have been an employee, you're conceding that there was no interactive process. There was no interactive process, but she had not come back. And then we have the case decided by Plenty Ferguson that the duty to the district. If that's your answer, I have to go back to my first question, which was she asked for an accommodation, and the answer was, we're not going to engage in the process because you're not an employee. What was she supposed to do then? But, your Honor, in order to answer that question, we have to remember that she made a request in February 2010, and she never came back. And in April, it was answered, and still she had not come back. Do you know why she didn't come back? No, we don't know. I thought it was because she couldn't see. Well, she never provided any, well, we suppose so, but she didn't provide any medical certificates saying I am on a leave, I am nothing. She stopped providing the services. An employee couldn't do that. She would not need to be on a medical leave, and as Ferguson, the case decided by Plenty, the duty to accommodate and engage in the conversation is triggered once the employee comes back with a medical leave saying you can come back with some limitations. Hypothetically, assume you had some doubt about whether she was an independent contractor or an employee. She then has made the request, I'd like to be accommodated. Have you taken a position in the district court on whether that request was a reasonable request? Well, it's that since she was, as per my client, there was no doubt that she was an independent contractor. We were not asked by the client. Please answer my question. I asked you to assume certain things. Can you repeat the question, please? Are you arguing that the accommodation she asked for was not a reasonable accommodation? Honestly, well, I would have to see the cost of the equipment, et cetera, that wasn't gone into when it wasn't established as part of the record and the evidence. Any further questions? No, thank you. Thank you both. Hold on. No, not you. This case isn't over yet. I would like to begin by clarifying the record citation where plaintiff's amended contract is included, stating that she is an independent contractor. It's appendix 1038 and 1039. The fifth clause of the amended contract, which was executed in 2013, states that she was an employee. It was executed after the department reached the agreement with the IRS. I hate to tell you, but that may not be dispositive of that issue. I agree, Your Honor. It's a common latest of agency on the merits, but since broader counsel has stated that the employer was well aware that she was an employee, this contradicts or shows that that was not the case. It's an interpretation by counsel. The district court has not made a determination on the merits as to whether she was an employee. But the documents that plaintiff signed specifically states that she remained an independent contractor, that Social Security would be deducted from her paycheck, but that that didn't change according to the employer, and she agreed that that didn't change the nature of her relationship with the employer. So I just wanted to clarify given counsel's representation. Can I tell you what I'm confused about? If we assume that both parties thought she was an independent contractor, but in fact she is not, do you have a defense? Is there a defense to the ADA claim that requires an interactive process? That's a second clarification. I was just reviewing the complaint, and although they claim that she wasn't there isn't a developed claim regarding denial of reasonable accommodation, and the case on appeal has not been, plaintiff has not raised that issue. So I do believe that that's not, their main claim is a discrimination and a retaliation claim. I see. Look, it does appear that the district court may have gotten the law wrong on what a qualified individual is by omitting the phrase with or without reasonable accommodation. Now, it's irrelevant if she's an independent contractor, but it's not irrelevant if there's a factual question about whether she's an independent contractor or not, at which point you have defenses left. One is it wasn't a reasonable accommodation, but I don't know if you're arguing that. Another is she had some obligations herself in this situation. She never notified anyone. She wasn't on the job. Everything we did was reasonable, even if it was mistaken, but it wasn't discriminatory. Correct. Okay. So what are your defenses at this point? It is her contention, even assuming that she was an employee, as the district court did for ruling in favor of defendants. The plaintiff has not shown that the non-renewal of her contract was due to discriminatory intent, nor that retaliation was the but-for cause of the non-renewal. There's no discriminatory intent. The mere non-renewal was based on non-discriminatory neutral reasons, the fact that she did not renew her contract. In page 1563 and 64 of the appendix is the plaintiff's deposition testimony where she states that she was well aware for five to six years of the process to renew her contracts, that even in prior years she herself gave the documents to the employer, to the department herself, and she didn't wait for the department to ask for the documents, because she was a responsible person who was aware of the process. So even if we assume that she did not receive the email that was sent to her work account because she was not there to receive it, she cannot draw an inference of discrimination from the mere fact that it was sent to the email precisely because at appendix 1319, it's a list of individuals whose contracts would be renewed, and this was May 2010. She was included in the list. So even if she did not receive the email, and since our counsel explained the circumstances in which the email was sent to that account, even if we accept that she did not read the email because she was not at work, that is not enough to sustain a claim that the non-renewal was due to discrimination or to the fact that she had filed for reasonable accommodation. She was not present at work, and she never presented a medical certificate clearing here for work. At appendix 1601, she admits that her doctor, Dr. Acevedo, never gave her a certificate stating that she could go back to work even with a reasonable accommodation that the doctor had recommended. The employer never received notice that she was willing, physically able. She had a serious eyesight condition that required three medical operations in the span between February and March. Even after she requested reasonable accommodation, she had a serious intervention in her eye. She admits on her deposition that she had to rest for a while, and that the procedures did not render the results that she was expecting. She became legally blind. Her left eye was seriously affected. So the record even shows that physically she was not a qualified individual, and the plaintiff states that she was willing. All right. The record shows that even if she had been given the four magnification computer screen, and what else did she want? She couldn't have done the job. For the operative time period from February to April, and even into May, the record shows that she was seriously disabled and that she had to rest. She suffered from severe headaches. She said she was depressed also due to her condition. So the uncontested facts, her deposition testimony, shows that she was not able to work even as of when? As of when? As of June? The period between March and May, and there's no indication that she was willing to work even. She filed for disability benefits before the Social Security Administration and the Rehabilitation Vocational Agency under the common wish, and she stated that her condition prevented her from working. So through that period, and that was in May 2010, so even by May, the record shows that even by May she was not available for work, and that's the reasonable explanation why she never contacted her employer. She never filed a release, a medical release stating that she was able to work. If there are no further questions.  Thank you.